McCormick, Barstow, Sheppard,
Wayte & Carruth LLP
Jonathan W. Carlson
Nevada Bar No. 10536
 *jonathan.carlson@mccormickbarstow.com*
Cheryl A. Grames
Nevada Bar No. 12752
 *cheryl.grames@mccormickbarstow.com*
Stacy Norris
Nevada Bar No. 15445
 *stacy.norris@mccormickbarstow.com*
Sean E. Cortney
Nevada Bar No. 16218
 *sean.cortney@mccormickbarstow.com*
8337 West Sunset Road, Suite 350
Las Vegas, Nevada 89113
Telephone:   (702) 949-1100
Facsimile:   (702) 949-1101

Attorneys for LIBERTY INSURANCE CORPORATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BRAD KEARNS, an individual; and ELIZABETH KEARNS, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>LIBERTY INSURANCE CORPORATION, a foreign Corporation; DOES I-XXX; ABC CORPORATIONS A-Z,<br><br>Defendants. | Case No. 3:24-cv-00060-MMD-CSD<br><br>**DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION TO DISMISS** |

COMES NOW Defendant Liberty Insurance Corporation ("Liberty"), by and through its counsel of record of the law firm of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, and hereby files its Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

**I.
INTRODUCTION**

This action is narrowly focused on the Kearns' contention that Liberty should pay them

Additional Living Expense benefits for as long as it takes for them to return to their damaged home in Stateline, Nevada. Their homeowners insurance policy, however, restricts Additional Living Expense ("ALE") benefits to the 12 consecutive months following the date of loss. In early March 2021, the Kearns' home sustained damage. To provide for the Kearns' alternative living arrangements, Liberty paid them ALE benefits for 12 consecutive months from the date of loss through early March 2022. Liberty fulfilled its contractual obligation. Now, the Kearns bring this suit to recover putative benefits they never contracted for nor paid premiums for when they insured their Stateline home. Even though the Kearns' chose a policy that provided one year of ALE benefits, they now request nearly *three years* of those benefits. Dissatisfied with the coverage they selected, they now claim Liberty breached the insurance contract, breached the implied covenant of good faith and fair dealing, and violated a whole host of statutory provisions regulating claims practices and trade practices.

For two primary reasons, Plaintiffs have failed to state a claim upon which relief may be granted. First, Plaintiffs' suit is time barred by their policy's enforceable suit limitation provision. Even accounting for Nevada's equitable tolling period, Plaintiffs waited too long to bring this suit. Because the suit limitation provision is unambiguous, it should be enforced to prevent Plaintiffs from bringing their claims for breach of contract and extra-contractual causes of action. Second, Plaintiffs' claims are nothing more than a vague and generic set of unsupported contentions that cannot survive a motion to dismiss. Plaintiffs dutifully recite the elements of their various causes of action but, critically, fail to pair those barren recitations with any concrete factual allegations that can demonstrate Liberty acted wrongfully. Thus, Plaintiffs' allegations are categorically insufficient and cannot survive Liberty's Rule 12(b)(6) motion to dismiss. For these reasons, and the detailed reasoning provided below, Plaintiffs' Complaint should be dismissed in its entirety for failure to state a claim upon which relief can be granted.

## II.
## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action arises out of a property damage incident that occurred at Plaintiffs Brad Kearns' and Elizabeth Kearns' ("Plaintiffs") home located at 116 Cypress Way, Stateline, Nevada near the

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 WEST SUNSET ROAD, SUITE 350
LAS VEGAS, NV 89113

2   Case No. 3:24-cv-00060-MMD-CSD
DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION TO DISMISS

1  shores of Lake Tahoe. (Doc. 1-1, ¶ 10). On March 06, 2021, a large pine tree fell on top of Plaintiffs'
2  Cypress Way home. (Doc. 1-1, ¶ 16). According to Plaintiffs' Complaint, the fallen tree crushed a
3  large portion of the home's roof and caused significant damage to the home. (Doc. 1-1, ¶16). In fact,
4  the damage was so severe, alleges the Complaint, that on March 06, 2021, Douglas County and
5  Tahoe Douglas Fire Department officials condemned the Cypress Way home, thus forcing Plaintiffs
6  to evacuate the home. (Doc. 1-1, ¶ 25).

7        At the time of the incident, Liberty insured Plaintiffs' Cypress Way home under
8  Homeowners Policy No. H37-261-261273-60 0 1 ("the Policy"). (Doc. 1-1, ¶ 11). Among other
9  coverages, the Policy provided a measure of coverage for "Loss of Use". (Doc. 1-1, ¶ 12). Plaintiff's
10 Loss of Use coverage included ALE, as defined by the Policy. (Doc. 1-1, ¶ 43). According to the
11 Complaint, Liberty informed Plaintiffs that the "Home Protector Plus" Endorsement to their Policy
12 controlled their Loss of Use coverage, including ALE (Doc. 1-1, ¶ 75). Thus, the Complaint alleges
13 that Liberty stated ALE coverage was limited to 12 consecutive months as provided for under the
14 "Home Protector Plus" Endorsement. (Doc. 1-1, ¶ 75). Plaintiffs allege that Liberty informed
15 Plaintiffs that Liberty had no obligation to pay ALE beyond 12 months. (Doc. 1-1, ¶ 72).

16       Plaintiffs allege that on November 21, 2022, Liberty adjuster Tashida Mahone wrote the
17 following in an email to Plaintiffs: "An additional thorough review was completed of your policy
18 as your inquiry pertains to Coverage D ALE/Loss of Use. Unfortunately, per last email your policy
19 states We will pay the amount of loss covered by Coverage D which is actually sustained by you
20 during the 12 consecutive months following the date of loss. The date of loss was 3/5/21 which
21 allowed coverage for temporary housing through 3/5/22." (Doc. 1-1, ¶ 106). According to the
22 Complaint, Plaintiffs' Cypress Way home has yet to be repaired and Plaintiffs' property damage
23 claim is still open to finalize the Dwelling Coverage for the damage sustained to the Cypress Way
24 home. (Doc. 1-1, ¶¶ 121-122). On December 20, 2023, Plaintiffs initiated this action by filing their
25 Complaint. *See* (Doc. 1-1). On February 07, 2024, Liberty removed this action to federal court.
   (Doc. 1).

26 **III.**
   **LAW AND ARGUMENT**

27 **A.**    **Standard for Motion to Dismiss**
28       FRCP 12(b)(6) provides that the defense of "failure to state a claim upon which relief can

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 WEST SUNSET ROAD, SUITE 350
LAS VEGAS, NV 89113

3     Case No. 3:24-cv-00060-MMD-CSD
DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION TO DISMISS

be granted" may be made by motion. A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, and authorizes the dismissal of a complaint when there has been a failure to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must be plead in such a fashion as to show that a plaintiff is entitled to relief. This "requires more than labels and conclusions, and a formulaic recitation of [a cause of action's elements] will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and must plead "factual content that allow the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, the factual allegations must be enough to raise a claim above the speculative level; bald contentions, unsupported characterizations and legal conclusions will not suffice to defeat a motion to dismiss. *Id.*; *see also G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc.*, 460 F.Supp.2d 1246, 1261 (D. Nev. 2006). There must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

Materials that are attached to or incorporated by reference in the complaint, or are matters of judicial notice, may be considered in a Rule 12(b)(6) motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document is incorporated by reference if the document is attached to the complaint, referred to extensively in the complaint, or forms the basis of a plaintiff's claim. *Id*. Additionally, for purposes of a motion to dismiss for failure to state a claim, reasonable inferences from factual allegations are to be taken to be true. *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998). However, these assumptions do not extend to "conclusory allegations of law" or to "unwarranted inferences." *Id*. Conclusions of law, or "mere recitals of a claim's elements, supported only by conclusory statements, are insufficient." *Nelson v. XL America, Inc.,* 2:16-cv-00060-JAD-GWF, 2017 WL 4185461 (D.Nev. Sept. 21, 2017), citing *Iqbal,* 566 U.S. at 678-79.

Hence, under the modern interpretation of Rule 8, a plaintiff must not only specify or imply a cognizable legal theory, she must also allege the facts of her case so that the court can determine whether she has any basis for relief under the legal theory she has specified or implied, assuming the facts are as she alleges (*Twombly-Iqbal* review).

**B.      Plaintiffs' claims fail as a matter of law to the extent they are based on Plaintiffs' 2021 insurance claim because Plaintiffs failed to initiate their suit within the time limit agreed to under the terms of the homeowners policy.**

Under Nevada law, "an insurer may protect itself from 'remote claims' by 'implementing explicit, unambiguous time limitations in its insurance contracts,' so long as the limitation provision does not run 'afoul of important public policy considerations.'" *Roash v. Auto. Ins. Co. of Hartford, Conn.*, No. 2:19-cv-00035-GMN-BNW, 2021 WL 7450044, at *3 (D. Nev. Mar. 22, 2021). Thus, in Nevada, suit limitation provisions are enforceable so long as the period provided for in the contract is a "reasonable balance between the insurer's interest in prompt commencement of action and the insured's need for adequate time to bring suit." *Clark v. Truck Ins. Exchange*, 598 P.2d 628, 629 (Nev. 1979). Nevada courts achieve this balance by reading an "equitable tolling" clause into every suit limitation provision. *Id*. This "equitable tolling" clause essentially pauses the limitation period from the time the insured notifies the insurer of the claim until the insurer formally denies coverage. *Id*. Thus, under Nevada law, regardless of how the suit limitation provision is worded, "the insured's limitations period does not begin to run until the insurer 'formally denies' liability or additional benefits." *Williams v. Travelers Home and Marine Ins. Co.*, 740 Fed.Appx. 134, 134 (9th Cir. 2018) (citing *Clark*, 598 P.2d at 629). "No magic words are necessary to constitute a denial of further benefits; rather the limitations period is triggered by 'notif[ication] that [the] carrier has failed to fulfill its promise to pay a claim.'" *Id*. (citing *Grayson v. State Farm Mut. Auto. Ins.*, 971 P.2d 798, 800 (Nev. 1998)). Finally, under this legal framework, a twelve-month suit limitation provision is enforceable in Nevada. *See Clark*, 598 P.2d at 628-630 (enforcing twelve-month suit limitation provision); *see also Queensridge Towers LLC v. Allianz Global Risks US Ins. Co.*, No. 15-15128, 2016 WL 7384054, at *1 (9th Cir. Dec. 21, 2016) (applying Nevada law and holding that "[b]ecause [the insured] discovered the glass damage more than twelve months before filing this action—even taking into account equitable tolling—the [12 month] limitation provision bars its claim for breach of contract.").

Here, the Policy contained a one-year suit limitation provision. See <u>Liberty Homeowners Policy</u>, attached hereto ***Exhibit "A"***.  That condition states:

McCORMICK, BARSTOW,
SHEPPARD, WAYTE &
CARRUTH LLP
8337 WEST SUNSET ROAD, SUITE 350
LAS VEGAS, NV 89113

5      Case No. 3:24-cv-00060-MMD-CSD
DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION TO DISMISS

**SECTION I – CONDITIONS**

**8. Suit Against Us.** No action can be brought unless the policy provisions have been complied with and the action is started within one year after the date of loss.

(***Exh. "A"***, Page 10 of 16, Section I – Conditions, Item 8). Consequently, even accounting for Nevada's equitable tolling requirement, Plaintiffs waited too long to file suit based on their March 2021 property damage claim.

Plaintiffs' claims are time barred by the Policy's suit limitation provision. On March 06, 2021, Plaintiffs' Cypress Way home sustained damage from a fallen tree. (Doc. 1-1, ¶ 16). On or about March 06, 2021, Plaintiffs filed a timely property damage insurance claim with Liberty. (Doc. 1-1, ¶ 17). Accordingly, the Policy's suit limitation provision was immediately equitably tolled starting on the date of loss, March 06, 2021. *See Clark*, 598 P.2d at 629. For purposes of ALE coverage, however, the equitable tolling period concluded upon Plaintiffs' receipt of Liberty's formal denial of additional benefits. *See Williams*, 740 Fed.Appx. at 134. On November 21, 2022, Liberty unequivocally stated in an email to Plaintiffs that ALE coverage would not extend beyond the 12 consecutive months provided for under the Policy. (Doc. 1-1, ¶ 106). The email unambiguously stated that the Policy allowed for ALE coverage from March 05, 2021 to March 05, 2022. (Doc. 1-1, ¶ 106). Thus, that email formally denied coverage for Additional Living Expenses extending beyond 12 months. *See Williams*, 740 Fed.Appx. at 134 ("No magic words are necessary to constitute a denial of further benefits; rather the limitations period is triggered by 'notif[ication] that [the] carrier has failed to fulfill its promise to pay a claim.'"). That email put Plaintiffs on notice that Liberty denied the extension of Additional Living Expense benefits beyond 12 consecutive months. Thus, the equitable tolling period concluded on November 21, 2022.

Following the conclusion of the equitable tolling period, Plaintiffs then had one year in which to bring suit to assert their claims relating to Additional Living Expense coverage. In other words, Plaintiffs were required to bring suit for breach of contract and bad faith relating to ALE benefits by November 21, 2023. Plaintiffs failed to meet this deadline. Instead, Plaintiffs waited until December 20, 2023 to initiate this action. Because this lawsuit came more than one year after Plaintiffs received a formal denial of additional benefits for ALE, even taking into account equitable

tolling, Plaintiffs' claims are time barred by the Policy's suit limitation provision. As a consequence, on this basis alone, Plaintiffs' Complaint should be dismissed in its entirety as a matter of law for failure to adhere to the Policy's explicit, unambiguous time limitation. See *Roash*, 2021 WL 7450044, at *3 (Under Nevada law, "an insurer may protect itself from 'remote claims' by 'implementing explicit, unambiguous time limitations in its insurance contracts,' so long as the limitation provision does not run 'afoul of important public policy considerations.'"); *see also Clark*, 598 P.2d at 628-630 (enforcing twelve-month suit limitation provision); *Queensridge Towers LLC*, 2016 WL 7384054, at *1 (9th Cir. Dec. 21, 2016) (applying Nevada law to enforce twelve-month suit limitation provision).[1]

## C. Alternatively, Plaintiffs' claim for breach of contract fails because Liberty fulfilled all the duties and obligations it agreed to under the terms of the Policy.

Under Nevada law, a claim for breach of contract requires: "1) the existence of a valid contract; 2) a breach by the defendant; and 3) damages as a result of the breach." *McCall v. State Farm Auto. Ins. Co.*, 2:18-cv-01058-JAD-GWF, 2018 WL 3620486 at *2 (D. Nev. Jul. 30, 2018) (citing *Cohen-Breen v. Gray Television Group, Inc.*, 661 F.Supp. 2d 1158, 1171 (D. Nev. 2009)). An insurance contract is a "contract[] to which ordinary rules of contractual interpretation apply," (*Liberty Ins. Underwriters Inc v. Scudier*, 53 F.Supp.3d 1308, 1314 (D. Nev. 2013) (citing *Maryland Casualty Co. v. Nationwide Ins. Co.*, 65 Cal.App.4th 21, 28 (1998)), and the Court should, therefore, "'look first to the language of the contract in order to ascertain its plain meaning…'" *Scudier*, 53 F.Supp.3d at 1314 (citing *Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 18 (1995)). A court "should not rewrite contract provisions that are otherwise unambiguous." *Senteney v. Fire Ins. Exch.*, 707 P.2d 1149, 1150 (Nev. 1988); *Ellison v. Cal. State Auto. Ass'n*, 797 P.2d 975, 977 (Nev. 1990 ) ("[C]ontracts will be construed from the written language and enforced as written."). Further, "the plaintiff generally has the burden of pleading and proving that it fulfilled conditions precedent in

---

[1] This Court also recently granted a Motion to Dismiss based on a similar suit limitation provision. *See Kinder v. Liberty Mut. Ins. Co.*, No. 2:23-cv-01338-JAD-BNW, (Doc. 7), Motion to Dismiss Complaint Pursuant to Federal Rules of Civil Procedure 12(B)(6). The relevant provision in that case stated: "No action can be brought against us unless the policy provisions have been complied with. Any action against us for denial of a claim, in whole or in part, must be commenced at any time up to, but not to exceed, one year from the date of denial of the claim."

1  order to recover on a breach-of-contract claim." *Nolan v. American Family Ins. Co.*, 2:15-cv-02051-
2  JAD-NJK, 2016 WL 7190542 at *3 (D.Nev. Dec. 12, 2016) (citing *Clark County School Dist. v.*
3  *Richardson Const., Inc.*, 168 P.3d 87, 95 n. 21 (Nev. 2007)).

4  Here, as discussed above, Plaintiffs' claim for breach of contract is barred by the Policy's
5  enforceable suit limitation provision. Nevertheless, even if the suit was not procedurally deficient
6  and could proceed on the merits, Plaintiffs' breach of contract claim would fail because they have
7  not shown how Liberty breached the insurance contract. Plaintiffs' breach of contract claim is based
8  on Liberty's declination of ALE benefits beyond 12 consecutive months after the date of loss. *See*
9  (Doc. 1-1). For the reasons discussed below, Liberty complied with the terms of the Policy by
10 restricting ALE benefits to the 12 consecutive months following the date of loss. Thus, Liberty did
11 not breach the insuring agreement here.

Section I of the Liberty Policy – Property Coverages provides, in pertinent part:

**COVERAGE D – Loss of Use**

The limit of liability for Coverage D is the total limit for all the coverages that follow.
1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover, at your choice, either of the following.
…
a. **Additional Living Expense**, meaning any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living; or
b. **Fair Rental Value**, meaning the fair rental value of that part of the "residence premises" where you reside less any expenses that do not continue while the premises is not fit to live in.
Payment under a. or b. will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere….

The periods of time under 1., 2., and 3. above are not limited by expiration of this policy. …

*Exh. "A"*, Policy, Page 3 of 16, Section I – Property Coverages, Coverage D – Loss of Use, Item 1; (Doc. 1-1, ¶ 24). This provision is then modified by the Special Provisions – Nevada Endorsement that provides, in pertinent part:

**COVERAGE D – Loss of Use** is deleted and replaced by the following:

**COVERAGE D – Loss of Use**

> The limit of liability for Coverage D is the total limit for all the coverages that follow.
>
> 1. If a loss covered under this Section makes that part of the "residence premises" where you reside not fit to live in, we cover Additional Living Expense. Additional Living Expense means any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.
>
> Payment will be for the shortest time required to repair or replace the damage or to permanently relocate your household elsewhere.
> …
> The periods under **1.**, **2.**, and **3.** above are not limited by expiration of this policy.

*Exh. "A"*, Policy, Special Provisions – Nevada Endorsement Page 3 of 8, Section I – Property Coverages, Coverage D – Loss of Use, Item 1; (Doc. 1-1, ¶ 45). Finally, one additional provision in the Policy modified coverage for Loss of Use. Plaintiffs' Policy contained a Homeprotector Plus Endorsement that stated, in pertinent part:

**C. INCREASED LIMIT – COVERAGE D**

> We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12 consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2, and 3 of Coverage D – Loss of Use.

*Exh. "A"*, Policy, Homeprotector Plus Endorsement, Increased Limit – Coverage D; (Doc. 1-1, ¶ 77).

Thus, reading the applicable Policy provisions together, there is no basis upon which Plaintiffs can rest their claim for breach of contract. The Policy's insuring agreement plainly states: "We will provide the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy." *See Exh. "A"*, Policy, Page 1 of 16, Agreement. The Homeprotector Plus Endorsement is an "applicable provision" of the Policy. Thus, it must be read in conjunction with all relevant coverage provisions. The Homeprotector Plus Endorsement limited ALE coverage to 12 consecutive months following the date of loss. Liberty paid Plaintiffs ALE benefits for 12 consecutive months following the date of loss. Plaintiffs received ALE benefits from March 2021 to March 2022. This was the amount of coverage the parties agreed to under the Policy. Therefore, Liberty did not breach the terms of the insuring agreement. As a consequence, Plaintiffs' claim for breach of contract fails as a matter of law because Liberty complied with all relevant Policy

provisions by paying Plaintiffs ALE for 12 consecutive months as agreed to under the Policy. Thus, for all these reasons, Plaintiffs' breach of contract claim should be dismissed for failure to state a claim upon which relief can be granted.

### D. **Plaintiffs' bad faith cause of action fails as a matter of law because Plaintiffs' claim simply expresses dissatisfaction with the terms of their Policy and fails to explain why there was no reasonable basis for Liberty's ultimate coverage determination.**

In Nevada, bad faith is established when an insurer acts unreasonably and with knowledge, or in reckless disregard of the fact that there is no reasonable basis for its conduct. *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (Nev. 1998). The Nevada Supreme Court has also defined bad faith as "an actual or implied awareness of the absence of a reasonable basis for denying benefits of the [insurance] policy." *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324 (Nev. 2009) (quoting *Am. Excess Ins. Co. v. MGM*, 729 P.2d 1352, 1354-55 (Nev. 1986)). Courts have characterized this requisite knowledge or awareness as a sort of "*mens rea* of knowing or reckless intent." *See Pioneer Chlor Alkali Co. v. National Union Fire Ins. Co.*, 863 F.Supp. 1237, 1243 (D. Nev. 1994). Thus, tortious bad faith claims contain both an objective and a subjective element. *Clifford v. GEICO Cas. Co.*, 428 F.Supp.3d 317, 324 (D. Nev. 2019) (internal citations omitted). Objectively, the insurer's denial of benefits must have been unreasonable. *Id*. Subjectively, "the insurer must have known its denial was unreasonable or, alternatively, the insurer must have recklessly disregarded that its denial was unreasonable." *Id*. Nevada sides with the majority of states in imposing a subjective knowledge requirement for bad faith causes of action. *See* Kenneth S. Abraham & Daniel Schwarcz, Insurance Law and Regulation 95 (7th ed. 2020) ("A majority of states also require that the insurer either was aware that it was acting unreasonably, or else recklessly disregarded this risk.").

In the seminal case, *Allstate v. Miller*, the Nevada Supreme Court cited California law to explain bad faith claims require "showing that the insurer acted in deliberate refusal to discharge its contractual duties." *Miller*, 212 P.3d at 330. Thus, "if the insurer's actions resulted from *an honest mistake, bad judgment, or negligence*, then the insurer is not liable under a bad-faith theory." *Id*. (emphasis added) (internal quotations omitted). Indeed, "bad faith implies unfair dealing rather than mistaken judgment." *Chateau Chamberay Homeowners Ass'n v. Associated Intern. Ins. Co.*, 108 Cal.Rptr.2d 776, 783 (Cal. Ct. App. 2001).

1          Here, Plaintiffs' allegations express dissatisfaction with Liberty's enforcement of their

2 Policy's terms as written. This is not enough to support a claim for breach of the implied covenant

3 of good faith and fair dealing. Specifically, Plaintiffs take issue with Liberty's enforcement of the

4 Policy's 12 month limit for ALE benefits. *See* (Doc. 1-1, ¶¶ 140-142). Plaintiffs suggest Liberty

5 "knew or should have known it had no good faith reason to limit the Loss of Use to 12 months." *See*

6 (Doc. 1-1, ¶ 141). Plaintiffs' allegations, however, contain no supporting factual allegations that

7 indicate how or why Liberty should have known that it was "acting unreasonably" or in "reckless

8 disregard of the fact that there was no reasonable basis for its conduct." *Powers*, 962 P.2d at 604.

9          In fact, Plaintiffs' allegations are missing that crucial element that resembles a *mens rea*,

10 showing that Liberty had some implied or actual awareness that it was engaging in misconduct.

11 Liberty merely enforced the Policy's language as written. The Policy's Homeprotector Plus

12 Endorsement limited Additional Living Expense coverage to 12 months. *See* **Exh. "A"**, Policy,

13 Homeprotector Plus Endorsement, Increased Limit – Coverage D; (Doc. 1-1, ¶ 77). So, rather than

14 acting with a reckless disregard of the fact that there was no reasonable basis for its coverage

15 decision, Liberty acted with knowledge that a plain, unambiguous Policy provision supported its

16 coverage decision. Thus, Liberty, indeed, had a good faith basis for limiting Additional Living

17 Expense coverage to 12 consecutive months.

18         Moreover, even if Liberty's ultimate coverage decision was incorrect, its honest mistake

19 would not rise to the level of bad faith because it would still be missing a subjective element. Bad

20 faith claims require "showing that the insurer acted in deliberate refusal to discharge its contractual

21 duties." *Miller*, 212 P.3d at 330. Plaintiffs have not shown that Liberty acted in deliberate refusal to

22 discharge its contractual duties. Liberty has consistently maintained that the Homeprotector Plus

23 Endorsement limited Additional Living Expense coverage to 12 consecutive months following the

24 date of loss. Thus, by paying Additional Living Expense benefits for 12 consecutive months, Liberty

25 acted with a sincere belief that it was simply enforcing the terms of the Policy and, accordingly,

26 discharging its duties owed to Plaintiffs. Even if that ultimate coverage decision were incorrect,

27 Liberty, at most, would only be culpable of *bad judgment* or an *honest mistake*. This is categorically

28 insufficient to form the basis of a bad faith cause of action. *Id*. Because bad judgment or an honest

McCormick, Barstow,
Sheppard, Wayte &
Carruth LLP
8337 West Sunset Road, Suite 350
Las Vegas, NV 89113

11          Case No. 3:24-cv-00060-MMD-CSD
DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION TO DISMISS

mistake cannot sustain a claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs' bad faith cause of action should be dismissed.

**E.    Plaintiffs' statutory unfair trade practices cause of action should be dismissed because their vague and generic allegations merely recite portions of the cited statutory provisions without including any supporting factual allegations.**

Plaintiffs' allegations are deficient because their barren recitations of the language from the various cited statutory provisions are insufficient to state a claim upon which relief can be granted. Under the pleading standard of FRCP 8(a)(2), "a mere recital of the statute…is not enough to survive a motion to dismiss." *Plaza v. Geico Direct*, 430 F.Supp.3d 689, 692 (D. Nev. 2020); *Stebbins v. Geico Ins. Agency*, 2019 WL 281281, at *3 (D. Nev. Jan. 22, 2019) (dismissing UCPA claim that "recites the language of several of those provisions without supporting factual allegations."); *Sgrillo v. Geico Cas. Co.*, 323 F.Supp.3d 1167, 1170 (D. Nev. 2018) (dismissing allegations that "merely regurgitate the statutory provisions of NRS 686A without providing any underlying factual support"); *Castillo v. GEICO Cas. Co.*, 446 F.Supp.3d 710, 714 (D. Nev. 2020) (complaint "merely lists various subsections of the statute and quotes the statutory language"); *Houston v. GEICO Cas. Co.*, 2021 WL 682060, at *4 (D. Nev. Feb. 22, 2021).

Here, Plaintiffs offer nothing other than a vague recitation of the language of the various statutory and administrative code provisions that Plaintiffs allege Liberty violated. Specifically, Plaintiffs allege Liberty: "compell[ed] Plaintiffs to institute litigation to recover amounts due under the insurance policy [NRS 686A.310(1)(f)]; compell[ed] Plaintiff to institute litigation to enforce the terms of the insurance policy; by failing to provide promptly to Plaintiff a reasonable explanation of the basis in the insurance policy, with respect to the facts of the insured's claim and the applicable law, for the denial of this claim or for an offer to settle or compromise this claim [NRS 686A.310(1)(n)]; by failing to retain, train and supervise competent adjusters to conduct prompt, thorough and impartial investigations to promptly determine the true facts of this claim; by carrying out unfair and deceptive trade practices in the business of insurance [NRS 686A.310]; and by other wrongful conduct." (Doc. 1-1, ¶ 156).

This generic assembly of "one-size-fits-all" allegations comprises the entirety of Plaintiffs' basis for their third cause of action. Indeed, Plaintiffs offer no concrete factual allegations that shed

light on how Liberty purportedly violated this laundry list of statutory provisions. Without any factual details to connect Liberty to the vague accusations of statutorily unfair trade practices, Plaintiffs' Complaint fails to state a claim that is plausible on its face. This kind of pleading is "precisely what the Supreme Court held to be insufficient for stating a claim in *Twombly* and *Iqbal*." *Houston*, 2021 WL 682060, at *4; *see also Twombly*, 550 U.S. at 555 ("a formulaic recitation of [a cause of action's elements] will not do."); *Iqbal*, 556 U.S. at 678 ("bald contentions, unsupported characterizations and legal conclusions will not suffice to defeat a motion to dismiss."). Consequently, Plaintiffs' third cause of action for statutorily unfair claims and trade practices should be dismissed as a matter of law for failure to state a claim upon which relief may be granted.

## F. **Plaintiffs' request for punitive damages should be dismissed as a matter of law because Plaintiffs' Complaint failed to include factual allegations of malicious, oppressive, or fraudulent conduct.**

1. *Standard for Punitive Damages*

Under Nevada law, punitive damages are retributive tools designed for the purpose of deterring harmful conduct. Punitive damages are never awarded as a matter of right. *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993); *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1052 (2000); *Bongiovi v. Sullivan*, 138 P.3d 433, 450 (2006). Punitive damages have as their underlying purpose "public policy concerns unrelated to the compensatory entitlements of the injured party." *Siggelkow*, 846 P.2d at 305. Accordingly, mere negligence cannot sustain an award of punitive damages. *See id*.

To state a claim for punitive damages, Plaintiff must prove by clear and convincing evidence that GEICO Choice acted with oppression, fraud, or malice, express or implied. *See* NRS 42.005. While NRS 42.001 defines oppression, fraud, and malice, NRS 42.005(7) requires that the common-law definitions of these terms be used in insurance cases. *See* NRS 42.005(7). Under common law, "oppression" is defined as "a conscious disregard for the rights of others which constitutes an act of subjecting plaintiffs to cruel and unjust hardship." *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 198 (Nev. 1989). Further, "malice involves actual hatred or ill-will, or the desire to successfully injure, vex, annoy, or harass." *Pioneer Chlor Alkali Co., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 863 F.Supp. 1237, 1251 (D. Nev. 1994). Fraud requires (1) a false

representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and, (5) damage to the plaintiff resulting from such reliance. *Albert H. Wohlers & Co. v. Bartgis*, 696 P.2d 949, 957-958 (Nev. 1998).

> 2. *Punitive damages are categorically unavailable to Plaintiffs because the facts alleged as to Liberty's evaluation of Plaintiffs' claim do not sufficiently allege malice, oppression, or fraud.*

Here, Plaintiffs request punitive damages by, once again, simply regurgitating the elements necessary for punitive damages without alleging any supporting factual allegations that could demonstrate malicious, oppressive, or fraudulent conduct. *See* (Doc. 1-1, ¶¶ 151, 158). Plaintiffs' bald contentions and unsupported characterizations of conduct warranting punitive damages are entirely insufficient. *Iqbal*, 556 U.S. at 678 ("bald contentions, unsupported characterizations and legal conclusions will not suffice to defeat a motion to dismiss."). In their requests for punitive damages, Plaintiffs simply state: "[b]y engaging in its bad faith conduct, Defendant acted fraudulently, oppressively, and in malicious disregard of the rights of Plaintiffs," (Doc. 1-1, ¶ 151) and "[i]n violating NRS 686A.310, Defendant acted fraudulently, oppressively, and in malicious disregard for the rights of Plaintiffs." (Doc. 1-1, ¶ 158). These allegations are both conclusory and unsupported. Plaintiffs do not allege any facts showing Liberty acted "with a conscious disregard for the rights of others which constitutes an act of subjecting plaintiffs to cruel and unjust hardship." *See United Fire Ins. Co.*, 780 P.2d at 198. Plaintiffs do not allege any facts showing Liberty acted with "actual hatred or ill-will" toward Plaintiffs or with "the desire to successfully injure, vex, annoy, or harass" Plaintiffs. *See Pioneer Chlor Alkali Co., Inc.*, 863 F.Supp. at 1251. Therefore, Liberty acted with neither malice nor oppression in its handling of Plaintiffs' claim for Additional Living Expense benefits.

Finally, Plaintiffs' Complaint did not show Liberty acted to defraud Plaintiffs regarding the parties' rights and duties under the policy. Plaintiff does not allege one single fact that demonstrates: (1) that Liberty made a false representation; (2) that Liberty had knowledge or belief that the representation was false, or had an insufficient basis for making the representation; (3) that Liberty

intended to induce Plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) that Plaintiffs justifiably relied on the misrepresentation; or (5) that Plaintiffs incurred damage resulting from their justifiable reliance on the putative misrepresentation. *See Albert H. Wohlers & Co.*, 696 P.2d at 957-958. In other words, Plaintiffs' Complaint did not assert any allegations that meet the elements of fraud as defined by the common law. *See* NRS 42.005(7). In fact, the unambiguous terms of the Policy's Homeprotector Plus Endorsement provided Liberty with a sufficient basis for its coverage decision limiting Additional Living Expense benefits to 12 consecutive months. Therefore, Liberty did not act with fraud.

Punitive damages are never awarded as a matter of right. *Siggelkow*, 846 P.2d at 304. They are unrelated to compensatory damages. *Id.* at 305. Because Liberty did not act with malice, oppression, or fraud, express or implied, in its evaluation of Plaintiffs' claim, exemplary or punitive damages are not available here. *See* NRS 42.005. Therefore, even if this Court denies Liberty's motion to dismiss the Complaint in its entirety, it should, alternatively, dismiss Plaintiffs' claims for punitive or exemplary damages.

## IV.
## CONCLUSION

Based on the foregoing, Plaintiffs failed to state a claim upon which relief may be granted. Even accounting for Nevada's equitable tolling period, Plaintiffs' suit is barred by their Policy's suit limitation provision. Further, even if the suit was not time barred by the suit limitation provision, Plaintiffs' breach of contract claim would still fail because Defendant paid Plaintiffs Additional Living Expense benefits for 12 consecutive months following the date of loss as agreed to under the unambiguous terms of the Policy. Finally, Plaintiffs' allegations are categorically insufficient to assert their claims for bad faith, statutorily unfair trade practices, and conduct warranting punitive

/ / /

/ / /

/ / /

/ / /

/ / /

damages. For these reasons, Plaintiffs' claims fail as a matter of law. Defendant Liberty respectfully requests that this honorable Court dismiss Plaintiffs' Complaint in its entirety.

Dated:  February 14, 2024

McCORMICK, BARSTOW, SHEPPARD, WAYTE & CARRUTH LLP

By: /s/Jonathan W. Carlson
Jonathan W. Carlson
Nevada Bar No. 10536
Cheryl A. Grames
Nevada Bar No. 12752
Stacy Norris
Nevada Bar No. 15445
Sean E. Cortney
Nevada Bar No. 16218
Attorneys for LIBERTY INSURANCE CORPORATION

9665658.1

**CERTIFICATE OF SERVICE**

I hereby certify that on this 14th day of February, 2024, a true and correct copy of **DEFENDANT LIBERTY INSURANCE CORPORATION'S MOTION TO DISMISS** was served via the United States District Court CM/ECF system on all parties or persons requiring notice.

By /s/Tina M. abrante
Tina M. Abrante, an Employee of
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP