UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

BRAD KEARNS, *et al.*,

                                   Plaintiffs,

        v.

LIBERTY INSURANCE CORPORATION,

                                   Defendant.

Case No. 3:24-cv-00060-MMD-CSD

ORDER

## I.    SUMMARY

Plaintiffs Brad and Elizabeth Kearns sued their homeowners' insurance company, Defendant Liberty Insurance Corporation, for refusing to pay them for more than 12 months of loss of use coverage after a tree fell on their house in Stateline, Nevada. (ECF No. 1 ("Complaint").) Before the Court is Defendant's motion to dismiss the Complaint in its entirety. (ECF No. 8 ("Motion").)[1] Because the Court cannot say that Plaintiffs waited too long to file suit, but Defendant did not breach the insurance policy providing the basis for the Complaint when properly construed—and as further explained below—the Court will grant the Motion. The Court will further grant Plaintiffs leave to amend their claim for breach of the implied covenant and fair dealing, and their state law claim, but not their breach of contract claim.

## II.    BACKGROUND

The following allegations are adapted from the Complaint. (ECF No. 1-1.) As noted, Plaintiffs own a house covered by a homeowners' insurance policy purchased from Defendant, policy number H37-261-261273-60 0 1 (the "Policy"). (*Id.* at 4.) Unfortunately, a tree fell on Plaintiffs' house on March 6, 2021, and the damage was severe enough that

---

[1]Plaintiffs responded (ECF No. 15) and Defendant replied (ECF No. 19).

1   the local fire departments condemned the house. (*Id.* at 4-5.) Plaintiffs filed a claim with

2   Defendant the day the tree fell on the house. (*Id.* at 4.)

3       As part of their claim, Plaintiffs sought loss of use benefits provided under the

4   Policy. (*Id.* at 4-13.) Plaintiffs initially sought 'Fair Rental Value' loss of use benefits, but

5   after a few months of back and forth, Defendant told them they could only get 'Additional

6   Living Expense' under the Policy. (*Id.* at 6-7.) Plaintiffs agreed to be paid 'Additional Living

7   Expense.' (*Id.* at 7.) It then took Defendant a few months and some back-and-forth to

8   issue Plaintiffs a check. (*Id.* at 7-8.) But Defendant eventually paid Plaintiffs something

9   for some amount of loss of use. (*Id.* at 8.)

10      However, Defendant took the position that it would not pay for more than 12

11  months of Additional Living Expense loss of use benefits. (*Id.* at 8-10.) Plaintiffs allege

12  that taking this position constitutes a breach of the Policy, and is indeed such an

13  unreasonable interpretation of the Policy that it constitutes bad faith and violates pertinent

14  provisions of Nevada state law. (*Id.* at 10-16.) Plaintiffs contend the Policy requires

15  Defendant to pay them loss of use benefits until their house is repaired, however long

16  that takes. (*See generally id.*) According to the Complaint, "the house has yet to be

17  repaired." (*Id.* at 12.)

18  **III.   DISCUSSION**

19      The Court first addresses Defendant's argument that Plaintiffs did not file suit

20  within the one year specified in the Policy and then addresses Defendant's Motion as to

21  each of Plaintiffs' three claims in the Complaint.

22      **A.     One-Year Limitation**

23      The Policy includes a provision titled, 'Suit Against Us.' It provides, "[n]o action can

24  be brought unless the policy provisions have been complied with and the action is started

25  within one year after the date of loss." (ECF No. 8-1 at 39.)[2] Plaintiffs reported the damage

26  to their house the same day it happened, on March 6, 2021. (ECF No. 1-1 at 4.) Defendant

27  _____

28      [2]This is a copy of the Policy Defendant filed as an exhibit to its Motion. As explained
    *infra* in Section III.B., the Court finds the policy properly incorporated by reference in the
    Complaint.

argues Plaintiffs' breach of contract claim[3] was equitably tolled from that day until November 21, 2022, when Defendant sent Plaintiffs an email denying coverage for additional living expenses beyond 12 months. (ECF No. 8 at 6.) Defendant accordingly argues that Plaintiffs' breach of contract claim is barred because they did not file this case until December 20, 2023, or more than one year after November 21, 2022. (*Id.* at 6-7.) Plaintiffs counter that they timely filed their claims because the suit limitation provision in the Policy was tolled at least until December 27, 2022—and beyond—because Defendant continued to negotiate with them regarding their claim for more than 12 months of additional living expenses after November 21, 2022. (ECF No. 15 at 13-16.) The Court agrees with Plaintiffs in pertinent part.

In Nevada, a period of limitations imposed in an insurance policy runs from the date of loss but is tolled from the time the insured gives notice of the loss until the insurer "formally denies liability." *Clark v. Truck Ins. Exch.*, 598 P.2d 628, 629 (Nev. 1979) (footnote and citations omitted); *see also Williams v. Travelers Home & Marine Ins. Co.*, 740 F. App'x 134, 134 (9th Cir. 2018) (citing *Clark*); *Queensridge Towers LLC v. Allianz Glob. Risks US Ins. Co.*, Case No. 15-15128, 2016 WL 7384054, at *1 (9th Cir. Dec. 21, 2016) ("Nevada law equitably tolls such insurance limitation clauses during the period between the date the insured first gave notice of the loss until the date the insurer formally denies liability.") (also citing *Clark*). "No magic words are necessary to constitute a denial of further benefits; rather the limitations period is triggered by 'notif[ication] that [the] carrier has failed to fulfill its promise to pay a claim.'" *Williams*, 740 F. App'x 134 (citations

---

[3]Defendant initially argued in its Motion that this one-year suit limitation provision barred all of Plaintiffs' claims (ECF No. 8 at 5-7), but clarified in reply that its argument only applies to Plaintiffs' breach of contract claim (ECF No. 19 at 2-5) in apparent response to Plaintiffs' argument that the suit limitation only applies to the breach of contract claim, citing one of the cases Defendant relied on in the pertinent part of its Motion (ECF No. 15 at 16-17). The Court accordingly construes this argument as limited to Plaintiffs' breach of contract claim. And the case upon which both parties rely supports Plaintiffs' argument as well. *See Queensridge Towers, LLC v. Allianz Glob. Risks US Ins. Co.*, Case No. 2:13-cv-197-JCM-PAL, 2014 WL 7359093, at *9 (D. Nev. Dec. 24, 2014), *aff'd*, Case No. 15-15128, 2016 WL 7384054 (9th Cir. Dec. 21, 2016) (finding "that only plaintiff's breach of contract claim is barred by the policy's 12–month limitations period[,]" not a common-law bad faith claim or claims under Nevada's Unfair Claims Practices Act).

1   omitted). Thus, the pertinent question is whether Defendant 'formally denied' Plaintiffs'

2   claim on November 21, 2022, as Defendant argues.

3       There is no dispute that one of Defendant's employees sent Plaintiffs an email on

4   November 21, 2022, stating that Defendant would only pay Plaintiffs for temporary

5   housing through March 5, 2022. (ECF No. 1-1 at 11.) However, and as Plaintiffs argue,

6   the back-and-forth continued after that. Specifically, on November 23, 2022, Plaintiffs

7   wrote Defendant back, noting their disagreement with Defendant's employee's

8   interpretation of the Policy. (*Id.* at 11-12.) Defendant responded on December 9, 2022; "I

9   have acknowledged your concerns which are under further internal review. We will reach

10  out to you once the review is finalized."[4] (ECF No. 15-2 at 2.) On December 27, 2022,

11  Defendant wrote Plaintiffs another email, again rejecting Plaintiffs' request to continue

12  monthly loss-of-use payments beyond 12 months. (ECF No. 1-1 at 12.) That email stated:

13      A second in-depth review was completed on your Liberty Insurance
        Corporation policy, in relation to the ALE concerns you presented. I have
14      listed both sections as they relate to ALE. Unfortunately, and with
        consideration, the NV special provisions are superseded by the Home
15      Protector plus endorsement as all claims are handled in compliance to the
        policy timeframe of 12 consecutive months following the date of loss. ALE
16      has been provided at the 12-month limit which ended on 3/5/22.

17  (ECF No. 15-3 at 3.) And while Plaintiffs contend that the back-and-forth continued

18  beyond this email, the further back-and-forth is immaterial for purposes of Defendant's

19  argument because Plaintiffs filed their Complaint on December 20, 2023, or less than a

20  ────────────────

21      [4]As should be evident from the citations to the Complaint in this Section, these
    facts are primarily taken from the Complaint itself. However, the December 9, 2022, email
22  that Plaintiffs submitted as an exhibit to their response is not explicitly mentioned in the
    Complaint. In addition, the December 27, 2022, email described herein is mentioned in
23  the Complaint, but the Complaint does not include the specific content of the email. (ECF
    No. 1-1 at 12.) That said, the Court finds that both of these emails, and their contents, are
24  properly incorporated by reference in the Complaint because the Complaint describes a
    back-and-forth between the parties that must have included December 9, 2022, given the
25  other dates included in the Complaint, and the Complaint indeed specifically includes an
    allegation regarding the December 27, 2022, email. (*Id.*) And the content of the emails
26  demonstrates that Defendant was continuing to review Plaintiffs' claim, not simply reaffirm
    prior denials. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir.
27  2018) (explaining that incorporation by reference can be appropriate when the full content
    of documents referenced in the complaint provides necessary context). Moreover,
28  Defendant does not dispute the authenticity or accuracy of the December 9 and
    December 27, 2022, emails. (ECF No. 19 at 2-5.) In sum, the Court deems the content of
    these two emails properly incorporated by reference in the Complaint.

1    year after this December 27, 2022, email. (ECF No. 1-1 at 12 (alleging Plaintiffs received

2    an email again denying their claim on that date), 17 (including filing date).)

3         Defendant did not 'formally deny liability' on November 21 because it told Plaintiffs

4    their concerns were under "further internal review" on December 9 and characterized the

5    review that apparently concluded on December 27, 2022, as a "second in-depth review."

6    (ECF Nos. 1 at 11-12, 15-2 at 2, 15-3 at 3.) Thus, and regardless of what transpired after

7    Defendant's December 27, 2022, email, Plaintiffs filed suit within one year of that date.

8    Plaintiffs' breach of contract claim is accordingly not barred by the one-year suit limitation

9    in the Policy.

10        **B.    Breach of Contract**

11        Defendant also argues Plaintiffs' breach of contract claim fails because Defendant

12   did not breach the contract: Defendant provided Plaintiffs with 12 months of alternate

13   living expense reimbursement, and that is all the Policy required. (ECF No. 8 at 8-10.)

14   Plaintiffs counter that Defendant breached the Policy by cutting loss of use benefits after

15   12 months because the Declarations page of the Policy reasonably suggested that

16   Plaintiffs could instead receive 'actual loss sustained' without any time limits, and the

17   'Homeprotector Plus' endorsement is subject to the time periods under the 'Special

18   Provisions – Nevada' endorsement, which runs until repairs are complete. (ECF No. 15

19   at 17-20.) The Court agrees with Defendant.

20        To start, the Court finds the Policy properly incorporated by reference in the

21   Complaint. Defendant attached a full copy of the Policy to its Motion. (ECF No. 8-1.)

22   Plaintiffs do not argue the Court cannot consider the Policy in its response to the Motion,

23   instead arguing—like Defendant in its Motion—for their interpretation of the pertinent

24   terms in the Policy. (ECF No. 15.) Moreover, and more pertinent to the incorporation by

25   reference doctrine, Plaintiffs included excerpts of the pertinent sections of the Policy in

26   their Complaint. (ECF No. 1-1 at 6-7 (excerpting the pertinent Nevada-specific terms), 9

27   (excerpting the pertinent section of the Homeprotector Plus Endorsement).) This both

28   speaks to the fact that there is no dispute about what words are in the Policy, but rather

what the proper interpretation of them is, and suggests that the whole Policy is properly incorporated by reference in the Complaint. And again, both parties are asking the Court to interpret the undisputed, pertinent words of the Policy in the Motion and Plaintiffs' response. (ECF Nos. 8 at 7-10, 15 at 17-22.) In sum, the Court deems the Policy incorporated by reference in the Complaint and will interpret it to resolve the Motion as to Plaintiffs' breach of contract claim.

Plaintiffs allege that Defendant breached the Policy by refusing to pay more than 12 months of 'Additional Living Expense' loss of use coverage, instead of unlimited monthly 'Additional Living Expense' until their home is repaired that Plaintiffs argue they are entitled to under the Policy. (ECF No. 1-1 at 4-9, 12-14.) The claim, as alleged, accordingly presents the Court with a clean question of contractual interpretation. "An insurance policy is a contract that must be enforced according to its terms to accomplish the intent of the parties." *Farmers Ins. Exch. v. Neal*, 64 P.3d 472, 473 (Nev. 2003) (footnote omitted). The Court must assign plain and ordinary meaning to the terms in the Policy from the perspective of someone not trained in the law. *See id.* "Unambiguous provisions will not be rewritten; however, ambiguities are to be resolved in favor of the insured." *Id.* (footnotes omitted). In addition, the insurance "policy must be read as a whole in order to give a reasonable and harmonious meaning and effect to all its provisions." *Nat'l Union Fire Ins. Co. of State of Pa. v. Reno's Exec. Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984) (citation omitted).

The Court agrees with Defendant's interpretation of the unambiguous Policy. To start, the Loss of Use provision of the Policy has been replaced by the 'Special Provisions – Nevada Endorsement' because the pertinent portion of that endorsement begins with the phrase, "COVERAGE D – Loss of Use is deleted and replaced by the following[.]" (ECF No. 8-1 at 52.) That is unambiguous. And relatedly, Plaintiffs' argument to the effect that they developed some understanding of the Policy by reading the 'Loss of Use' section of the Declaration is unpersuasive. (ECF No. 15 at 18.) Whatever the 'Loss of Use' section

1  of the Declaration provided, the Policy plainly specifies that it was deleted and replaced

2  by what follows.

3        And what follows specifies that the insurer will only provide Additional Living

4  Expense, "for the shortest time required to repair or replace the damage or to permanently

5  relocate your household elsewhere." (ECF No. 8-1 at 52.)[5]

6        But the Policy also includes the Homeprotector Plus Endorsement. (ECF No. 8-1

7  at 46-47.) As pertinent here, an endorsement to an insurance policy generally "modif[ies]

8  the effect of preprinted policy exclusions or exceptions[.]" *Deutsche Bank Nat'l Tr. Co. as*

9  *Tr. for Registered Holders of Morgan Stanley ABS Cap. I Tr. 2004-HE8, Mortg. Pass-*

10 *Through Certificates, Series 2004-HE8 v. Fid. Nat'l Title Ins. Co.*, 536 P.3d 915, 922 n.3

11 (Nev. 2023). And here, reading the Policy as a whole, the Court finds that the

12 Homeprotector Plus Endorsement modifies the Loss of Use section of the 'Special

13 Provisions – Nevada Endorsement.' To hold otherwise would read the Homeprotector

14 Plus Endorsement out of the contract—which the Court cannot do. *See Reno's Exec. Air,*

15 *Inc.*, 682 P.2d at 1383 (directing that the Court must read the contract to give effect to all

16 of its provisions).

17        The Homeprotector Plus Endorsement provides in pertinent part:

18 **C.  INCREASED LIMIT - COVERAGE D**

19    We will pay the amount of loss covered by Coverage D which is actually sustained by you during the 12
   consecutive months following the date of loss, subject to the periods of time under paragraphs 1, 2 and 3 of
   Coverage D - Loss of Use.

20

21 (ECF No. 8-1 at 47.) So the Policy pays Additional Living Expense for 12 months from the

22 date of loss subject to the period of time specified in paragraph one of Coverage D – Loss

23 of use. (*Id.*) But paragraph one of Coverage D of the Policy imposes no further time limit,

24

25        [5]This is paragraph one of the applicable section, but the Court finds that paragraph
   one is the applicable subsection because Plaintiffs allege their house became

26 uninhabitable after the tree fell on it. (ECF No. 1-1 at 5 (noting the fire department deemed
   their house uninhabitable).) And the other two paragraphs deal with premises rented out

27 to others (paragraph two) and civil authorities preventing the insureds from using the
   premises because of damage to neighboring premises (paragraph three) (ECF No. 8-1

28 at 52)—neither of which apply to the allegations in Plaintiffs' Complaint. (ECF No. 1-1 at
   5.)

1   instead providing Defendant will only provide Additional Living Expense, "for the shortest
2   time required to repair or replace the damage or to permanently relocate your household
3   elsewhere." (ECF No. 8-1 at 52.) 'Subject to' means that the periods of time in paragraph
4   one of Coverage D – Loss of Use could impose a further restriction on the 12 months, but
5   in this case, it does not—because paragraph one of Coverage D imposes no additional
6   time limit. (*Compare* ECF No. 8-1 at 47 *with id.* at 52.) In addition, Coverage D implies
7   that the time period is not unlimited but is instead limited to 'the shortest time required.'
8   And indeed, this too is consistent with Defendant's position that the Policy only requires
9   it to pay Additional Living Expense for 12 months from the date of loss. Plaintiffs' contrary
10  argument that somehow 'subject to' deletes the 12 month limitation because there is no
11  time limit in paragraph one of Coverage D is therefore unpersuasive because it is contrary
12  to the plain meaning of the unambiguous text and violates the general rule that the Court
13  must give effect to all of the Policy's provisions. (ECF No. 15 at 20-22.)

14          Because the Policy only requires that Defendant pay Additional Living Expense for
15  12 months from the date of loss, and there is no allegation or dispute that Defendant did
16  not do that,[6] Defendant did not breach the Policy. The Court therefore grants Defendant's
17  Motion as to Plaintiffs' breach of contract claim. *See, e.g.*, *McCall v. State Farm Mut. Auto.*
18  *Ins. Co.*, Case No. 2:16-cv-01058-JAD-GWF, 2018 WL 3620486, at *2 (D. Nev. July 30,
19  2018), *aff'd*, 799 F. App'x 513 (9th Cir. 2020) (listing "a breach by the defendant" as one
20  of the three required elements of a breach of contract claim). This dismissal of Plaintiffs'
21  breach of contract claim is with prejudice because amendment would be futile—the
22  parties' dispute regarding this claim presented a question of law that the Court has
23  resolved.

24          **C.    Contractual Breach of the Implied Covenant**

25          Defendant next argues Plaintiffs' claim for breach of the covenant of good faith and
26  fair dealing implied in the Policy should be dismissed because dissatisfaction with
27

28          [6]Indeed, while Plaintiffs allege it took longer than it should have, they allege that
    Defendant paid them for 12 months of loss of use. (ECF No. 1-1 at 8.)

8

1  Defendant's enforcement of the Policy's terms as written is not enough to state a claim,

2  and even if Defendant had made an incorrect decision regarding the dispute leading to

3  this case, Plaintiffs' Complaint lacks necessary allegations to the effect that Defendant

4  knew or should have known there was coverage but denied Plaintiffs' claim in pertinent

5  part anyway. (ECF No. 8 at 11.) Plaintiffs counter that this claim should survive the Motion

6  because Defendant acted unreasonably in declining to pay Plaintiffs' the additional loss

7  of use benefits they contend they were entitled to. (ECF No. 15 at 22-27.) The Court again

8  agrees with Defendant.

9        As alleged, Plaintiffs' claim for breach of the implied covenant hinges on their claim

10  that Defendant breached the Policy by declining to pay them for more than 12 months of

11  loss of use benefits. (ECF No. 1-1 at 14.) But the Court found above that Defendant did

12  not breach the policy. *See supra.* This claim accordingly fails as alleged. The Court thus

13  grants Defendant's Motion as to Plaintiff's claim for breach of the implied covenant of

14  good faith and fair dealing.

15        However, the Court will grant Plaintiffs leave to amend this claim because the

16  Court cannot say that amendment would be futile. Both in the general factual allegations

17  section of the Complaint and in their response to the Motion, Plaintiffs argue that

18  Defendant: (1) insufficiently helped them with their claim; (2) unreasonably delayed in

19  communicating with them and/or communicated with them in a confusing or misleading

20  way; and (3) unreasonably delayed in paying them their loss of use benefits. (ECF Nos.

21  1-1 at 5-8, 15 at 25-27.) These allegations plausibly suggest that Plaintiffs could reframe

22  their claim for the breach of the implied covenant of good faith and fair dealing from one

23  based on a breach of contract to one based on the situation, "[w]here the terms of a

24  contract are literally complied with but one party to the contract deliberately countervenes

25  the intention and spirit of the contract[.]" *Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*,

26  808 P.2d 919, 922-23 (Nev. 1991). Such a claim could be viable even though the Court

27  has found Defendant did not breach the Policy based on the allegations in the Complaint.

28  Plaintiffs accordingly have leave to amend this claim within 30 days.

**D.      Remaining State Law Claim**

Defendant finally moves for dismissal of Plaintiffs' remaining state law claim. (ECF No. 8 at 12-13.) Like Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing, Plaintiffs' claim for breach of Nevada's statutes prohibiting unfair trade practices also largely hinges on Plaintiffs' core contention that Defendant breached the Policy by not paying them more than 12 months of loss of use coverage. (ECF No. 1-1 at 16.) Defendant's Motion is also granted as to this claim because Defendant did not breach the Policy. However, the Court also grants Plaintiffs leave to amend this claim because— also like the breach of the implied covenant of good faith and fair dealing claim—Plaintiffs could more specifically allege in an amended complaint how Defendant violated specific Nevada statutes prohibiting unfair claims practices by: (1) insufficiently helping them with their claim; (2) unreasonably delaying in communicating with them or communicating with them in a confusing way; and (3) unreasonably delaying paying them their loss of use benefits. (ECF No. 1-1 at 5-8.) Plaintiffs have 30 days to amend this claim in line with this order as well.

**IV.      CONCLUSION**

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Defendant Liberty Insurance Corporation's motion to dismiss (ECF No. 8) is granted.

It is further ordered that Plaintiffs' Complaint (ECF No. 1) is dismissed, in its entirety, as specified herein.

///

///

///

///

10

It is further ordered that dismissal is with leave to amend as to two claims, but Plaintiffs must file any amended complaint consistent with this order within 30 days. If Plaintiffs do not timely file an amended complaint, the Court may dismiss this case in its entirety, with prejudice, and without further warning.

DATED THIS 11th Day of April 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE